BATSON v. ROSOFA.

(Circuit Court of Appeals, Second Circuit. November 12, 1919.)

No. 25.

1. APPEAL AND ERROR ⬳927(7)—EVIDENCE CONSIDERED IN FAVORABLE LIGHT TO APPELLANT WHERE JUDGMENT IS DIRECTED.

Where judgment was directed against plaintiff in error, the evidence is to be considered in the light most favorable to him by the appellate court.

2. BROKERS ⬳88(3)—SUFFICIENCY OF EVIDENCE JURY QUESTION IN ACTION FOR COMMISSIONS.

In an action by a broker for compensation for procuring underwriting for the sale of stock, the direction of verdict for defendants, on ground that it did not appear that the underwriter procured was ready, willing, and able to carry out the agreement, held improper, though complaint alleged the broker had produced an underwriter ready, etc.; the bill of particulars alleging, and there being evidence showing that the underwriter procured was the one defendants desired, and that they agreed to pay the compensation, if the broker induced such one to act.

In Error to the District Court of the United States for the Southern District of New York.

Action by Roland R. Batson against Juan Bianchi Rosofa and others. Judgment on a directed verdict for defendants, and plaintiff brings error. Reversed.

Koenig, Sittenfield & Aranow, of New York City (F. Aranow, of New York City, of counsel), for plaintiff in error.

Bouvier & Beale, of New York City (P. Beale, of New York City, of counsel), for defendants in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARD, Circuit Judge. [1, 2] This is a writ of error to a judgment directed by the court in favor of the defendants. In this situation the record is to be read as favorably to the plaintiff as possible. The sequence of events is as follows:

Exhibit A.

"New York, March 25, 1918.

"Mr. R. R. Batson, 120 Broadway, New York City—Dear Sir: We, Sucesores de Bianchi, a copartnership residing in Porto Rico, beg to confirm our verbal agreement with you, which is as follows:

"(1) You are hereby authorized by us to procure for us underwriting for fifty-six thousand eight hundred and sixty-five (56,865) shares of preferred stock and twenty-two thousand seven hundred and forty-six (22,746) shares of common stock of the West Porto Rico Sugar Company, at the price of eighty-six dollars ($86) per share of preferred stock, carrying 40 per cent. of common stock as bonus upon the form of underwriting agreement annexed hereto.

"(2) We agree to pay you two per cent. (2%) on the amount of underwriting as your compensation for services in procuring such underwriting agreement signed.

"Yours very truly,                                      Sucesores de Bianchi,
                                                         "By J. Bianchi.

"Accepted and agreed to: R. R. Batson, Witness."

Exhibit B.

"New York, March 25, 1918.

"Mr. R. R. Batson, 120 Broadway, New York City—Dear Sir: This is to explain more explicitly the terms of the contract, hereto annexed, entered into with you, which provides for the payment to you of a commission of two per cent. (2%) on the amount of underwriting you may secure for us on an issue of fifty-six thousand eight hundred sixty-five (56,865) shares of preferred stock and twenty-two thousand seven hundred forty-six (22,746) shares of common stock of the West Porto Rico Sugar Company, which stock represents the properties of the sugar estates known as Coloso, Progresso, Vanina, and Loiza, and lands adjacent, situated in Porto Rico, having a total acreage exceeding twenty-five thousand (25,000) acres, which stock we agree to deliver when and as called for by Messrs. Toole, Henry & Co., 120 Broadway, New York, who, it is agreed, are to be managers of any underwriting syndicate that may be formed.

"(1) In the event that any member or members of the underwriting syndicate are unable to live up to the terms of the annexed underwriting agreement, because of any acts of commission or omission on our part, you shall still be entitled to and shall receive upon demand, the commission of two per cent. (2%) mentioned in the contract next attached.

"(2) It is understood that, should the underwriters to the agreement referred to refuse to carry out the terms of said agreement, in that event no commission is to be paid to you.

"Yours very truly,                                      Sucesores de Bianchi,
                                                         "By J. Bianchi.

"Accepted: R. R. Batson. March 26, 1918."

Exhibit C.

"Consolidation of West Porto Rico Sugar Co.

"The undersigned, as syndicate participants, agree to subscribe to 69,000 shares of the West Porto Rico Sugar Company, preferred stock at $86 per share, and with which the undersigned will receive as bonus 27,600 shares of common stock, or forty (40) shares of common stock for each 100 shares subscribed for under this agreement, which ratio applies to all syndicate participants.

"The total number of shares which the syndicate as a whole shall subscribe for is 69,000 out of a total authorized issue of 100,000. The balance of the 100,000 shares of preferred stock which is not offered for subscription to this syndicate shall remain in the treasury of the company unissued dur-

ing the life of this agreement, and neither shall the company sell or offer for sale or otherwise part with, during the life of this agreement, any common stock other than that necessary to complete the bonus under the terms outlined above.

"Messrs. Toole, Henry & Co., 120 Broadway, New York, shall be managers of the syndicate, and as managers are entitled to and shall receive as compensation a commission of 1½.% of the total value in dollars of the amount of stock subscribed for.

"The 69,000 shares of preferred stock (and the 34,500 shares of common stock less the number of shares to be exchanged with the old company) shall be offered for public subscription at such time and upon such terms as the syndicate managers shall determine upon. They are also empowered to market stock in any other manner they may deem advisable, but any profits derived from the public offer and sale of syndicate stock shall be divided pro rata amongst syndicate participants in proportion to the amount of their subscription, but after deducting the expenses of sale; and a just and fair measure of expenses for marketing the stock as it will be accounted for by syndicate managers.

"The payment of the stock as above subscribed shall be made in four installments of 25% each as called for by the syndicate managers, the first upon five days' notice, and the last three upon thirty days' notice, and at intervals of not less than six weeks each.

"The syndicate shall be kept alive and this agreement shall continue until such time as a majority in amount of stock subscribed for shall vote that the syndicate shall cease.

"New York, 16th day, March, 1918.

"[Signed]    Toole, Henry & Co.
"Form of syndicate agreement approved by Suc's Bianchi, by J. Bianchi."

The plaintiff testified that the defendants employed him to get Toole, Henry & Co. to sign Exhibit C. March 19, 1918, the defendants returned these papers to the plaintiff pinned together; Exhibit C being approved by them, but not yet signed by Toole, Henry & Co. March 25 defendants wrote Toole, Henry & Co.:

Defendant's Exhibit 4.

"New York, March 25, 1918.

"Messrs.· Toole, Henry & Co., 120 Broadway, New York City—Dear Sirs: Referring to the syndicate agreement covering an issue of 69,000 shares of preferred stock of the West Porto Rico Sugar Company, out of an authorized issue of 100,000 shares, and the shares of common stock necessary to complete the bonus under the terms of the syndicate participating agreement, which stock represents the properties of the sugar estates known as the Coloso, Progresso, Vanina, and Loiza, and lands adjacent, situated in Porto Rico, having a total acreage exceeding 25,000 acres, we wish to say:

"(1) You are hereby given full authority to act as syndicate managers in any underwriting that may be formed, and you are granted by us all of the powers enumerated in the syndicate participating agreement.

"(2) It is understood and agreed that we shall deliver this stock to you when and as called for by you.

"(3) It is understood and agreed that we shall supply you, as syndicate managers, upon demand, with any documents you may call for relating to this issue.

"Yours very truly,                                    Sucesores di Bianchi."

March 28 plaintiff obtained the signature of Toole, Henry & Co. to Exhibit C. Eo die plaintiff wrote:

"I have to inform you that I have formed a syndicate to underwrite the stock of the West Porto Rico Sugar Company referred to in your agreement with me, dated March 26, 1918, and that the aforesaid shares have been subscribed for."

Eo die defendants replied:

### Defendant's Exhibit 2.

"R. R. Batson, New York, N. Y.—Dear Sir: We have received your letter informing us that a syndicate to underwrite the stock of the West Porto Rico Sugar Company as per agreement, has been formed, and that stock has been subscribed for.

"We notice that said letter is signed by you personally.

"It is our understanding that all negotiations for this underwriting have been carried out with you as representative of Messrs. Toole, Henry & Co., and therefore we beg that the letter stating that stock has been subscribed for be signed by Messrs. Toole, Henry & Co., or personally by you as a representative of said concern.

"Just as soon as we receive same, we will be glad to procure the release on behalf of Messrs. Toole, Henry & Co., which form you have sent us.

"Very truly yours, [Signed] Bianchi."

Toole, Henry & Co. replied:

### Defendant's Exhibit 3.

"Toole, Henry & Co.

"120 Broadway, New York, April 2, 1918.

"Messrs. Sucesores de Bianchi, 82 Beaver Street, New York City—Dear Sirs: We hereby notify you that we will act as managers of the syndicate underwriting the stock of the West Porto Rico Sugar Company as effected by Mr. R. R. Batson. The matter is now receiving our attention.

"Yours very truly, Toole, Henry & Co."

The complaint did allege that the plaintiff had produced an underwriter ready, willing, and able to perform the syndicate agreement, Exhibit C, but by two bills of particulars required of him the issue to be tried was whether he obtained Toole, Henry & Co. to subscribe for the whole issue under that particular agreement.

The District Judge, construing Exhibit C as a subscription by Toole, Henry & Co. for the whole issue of stock, as well as a consent to act as syndicate managers, directed a verdict for the defendants, on the ground that the plaintiff had not produced an underwriter ready, willing, and able to perform the syndicate agreement:

"The so-called syndicate agreement, marked Plaintiff's Exhibit C, appears to me to contain on the one hand subscriptions by the subscribers, and on the other hand an agreement by the subscribers or proposed subscribers, appointing Toole, Henry & Co. syndicate managers, and providing for their compensation and the mode in which they should market the stock. It does not in my opinion relieve the persons who signed the agreement from the ordinary obligation of paying for the stock in the regular way, nor is the effect of the whole transaction such as to relieve the broker, whom the plaintiff claims to be, from the obligation to establish that a person or persons whom he obtained as subscribers to a transaction, whether it be for the purchase of stock or for the purchase of real estate, were ready, able, and willing to perform. I think that is a condition, unless it is clearly provided against in some way, and the contract which is admittedly here the contract contained in the letters A and B clearly should set forth that Toole, Henry & Co., irrespective of their financial ability, would be accepted as adequate subscribers. I do not think, unless that were done—and it was not here done—that it would satisfy the ordinary requirements of law which a broker must meet. So far as this case shows, the plaintiff mainly obtained the signature to a paper involving enormous obligations, and claims $98,000, without having adduced any proof that the persons whose signatures he secured were ready, able, and willing to perform."

But if the plaintiff's story is true his engagement was merely to get a particular underwriter, viz. Toole, Henry & Co., and this the jury might find he did. If so, there is no question of that underwriter being ready, willing, and able, because the defendants got exactly what they bargained for.

The judgment is reversed.